Counsel, you may notice for the record that we are four now on the bench, and Justice Tom Harris is the fifth panel member who is on this case with us. He is unable to be here for the oral argument in person, but the oral argument, as you well know, is being taped, and it will be available for his review, and he's a full participating member of this panel on this case with the benefit of both the oral argument and the benefit of your written briefs. With that being said, for the record, please proceed. Thank you, Your Honor. May it please the Court, as am I. My name is Mark Maxwell. I'm the attorney for Petitioner Jason Kilbrun, and we are requesting that this Court reverse the decision of the Commission. This is a case involving a correctional officer employed by Santa Ana County who, after a violent encounter with an inmate on April 25, 2011, suffered an injury. He was aggravated with a pre-existing condition, and the net result was it cost him his job because he was unable to return to that job. The pre-existing issue in this case is something called Shurman's disease, which has been defined as an accentuated curvature of the thoracic spine. Can I ask you a question? Dr. Williams, as I'm reading the record, was one of the claimant's treating physicians? Yes. Did he testify that the claimant's work accident resulted in any changes? Did he really support the claimant's case? He supports the claimant's case in this – yes, he does, because he testified that he had a pre-existing condition. Then came the work injury, and after the work injury, because of the aggravation, the doctor testified that it did aggravate this pre-existing condition. Because of the pain complaints, he should not go back into the jail where there are, on average, violent encounters with inmates two to three times per week. Did he issue that because the defendant or the claimant requested that he issue that? There is something in the record to suggest that the petitioner did request that. There certainly is something he requested. At the same time, look at the testimony of the co-worker, Mr. Jim Wise, who is also a correctional officer, who testified without dispute. It is a very violent environment. On average, you can expect two to three violent encounters with an inmate per week, all of which would have the ability to cause someone with a pre-existing problem to have a worsening of their condition. Let me ask you a couple of questions. Did Williams testify that his work accident of April 25th did not result in any objective changes in his spine? Dr. Williams... That would be a yes or a no. The work injury did not cause any objective... Did Dr. Hereford write in the addendum report of November 21st that although it is reasonable to assume that the claimant's work accident exaggerated the pain symptoms, the underlying condition of the claimant's spine was not the result of his work accident? Did Dr. Hereford write that? Yes. In a report of July 31st, 2012, did she write that the claimant's need for any future treatment is not the result of his work injury? Any need for additional treatment for his pre-existing thoracic spine symptoms and Shunerin's disease? That's what any need for future treatment is for? That's what her opinion was, Your Honor. Okay. And based on a complete lack of change in the diagnostic studies and the overwhelming evidence that he did not sustain an acute injury to his spine, along with credibility issues, the commission found that the prevongerance of the evidence supports the conclusion that the claimant suffered a thoracic sprain or exacerbation as a result of the work accident, and then credited the opinions of Williams and Hereford, saying that his current condition is not causally related? That was their decision? That was the commission's decision, yes. What's wrong with it? What's wrong with that is a couple of things. One, despite the inconsistencies which are in the record, nobody, but nobody, has testified this man's malingering. As a matter of fact, Dr. Williams said, I know he's having pain. Number two, for Dr. Williams to say, you should not go back into the jail, you should not be around those inmates anymore, is very reasonable under these circumstances, whereas Dr. Hereford simply reads a written job description that has statements in it such as, correctional officers shall accompany inmates on all their movements, or they shall protect all persons inside of the jail. What that really means is, you're in there at risk every day, and there are going to be plenty of times when you've got to break up a fight. And you're going to put yourself at risk by doing so. So Dr. Williams says, he should not go back into that environment and run the risk of further injury, and Dr. Hereford just says, well, if he doesn't, it's only because of his pre-existing Shorman's disease, it's not because of the work injury. The other distinguishing feature, I would argue, is that, and I cite the Schroeder case in my brief. The Schroeder case stood for the proposition that there was an aggravation of a pre-existing condition. In that case, the pre-accident and post-accident films of that injured worker's spine were the same. But the treating doctor in Schroeder said basically the same thing as Dr. Williams here, and that is, when you've got a pre-existing condition, you don't need that much force in order to aggravate it. Number one, number two, it is common for a person with a pre-existing condition to get injured, suffer this increase in pain when the underlying film is all of the same. So let me ask you a related question. You've also asserted that the commission wrongfully refused to apply a chain of events analysis in this case. Yes. On what basis are you taking that position? I take that basis because I believe the commission's decision looks at his pre-accident condition and treatment and thinks that he was not in a relatively good state of health prior to the war. No, he wasn't. He wasn't? He wasn't. We all know that. All the medical records say he wasn't in a good state of health. And in order to apply a chain of events, you've got to have somebody who is in a good state of health. But prior to the accident, he had never been restricted from working. Well, that doesn't mean he was in a good state of health. This guy had this disease of his back since he was a child, didn't he? Normally manifests itself when you're in adolescence. But he's never had, to my knowledge, and I don't think the record reflects any problems with it, that required any change in his behaviors, any change in his lifestyle until this work-related accident. In the year 12 or 13 months before this work injury, I think he'd seen a chiropractor eight times. I think he'd seen Dr. Williams two or three times. And I think he saw another doctor once. And for the last five, six months before the accident in question, there is not a single medical record where he went to see any medical treatment as a result of his Sherman's disease or his thoracic condition. But then comes the work injury when he gets slammed into the doorway by an inmate trying to get in the next room so he can pound on somebody else. And I know that it is a... This accident happened on April 25, 2011? Correct. He had an MRI on October 6, 2010? Correct. What did it show? Chronic wedge compression, deformity of T9, mild to moderate spinal and canal stenosis, mid to lower thoracic degenerative end plate irregularity with degenerative disc disease, loss of height, and kyphosis? It did. No evidence of recent treatment was noted. That's hardly good condition, is it? It is not.  I would like to point out to you, Your Honor, however, that from that date until the date of the accident, there is not one shred of evidence that he sought medical treatment for thoracic spine pain. Seven months. Seven months between that MRI and the injury on April 25. Seven months of full-duty work, seven months of dealing with inmates, seven months worth of who knows how many encounters with inmates. Dr. Schmucker's record of October 1, 2012 indicates that he complained of persistent thoracic spine pain, reported experiencing pain after sustaining a bloat. It was back in March of 2010. Schmucker noticed that he had tenderness to palpitation of his thoracic spine, and he reviewed an earlier MRI. And which doctor's visit was that, Your Honor? Was that October 2010? That's October 2010, seven months before the accident. Admittedly, he had medical treatment and he had issues before the work accident. Persistent thoracic spine pain. That's what it says. That's what the record reflects. Can't argue with it. I would, however, point out that if you look at the physical findings of the doctors and you look at the pain complaints from the petitioner pre-accident and post-accident, you're going to find that his physical problems were much more significant after the work-related injury, and his pain complaints were also much more significant after the work injury. But Williams did opine that there was no objective changes to his spine as a result of this accident. He did. He could see no change or nothing significant in pre-accident or post-accident films of the man's thoracic spine. My argument is, and based upon Schrader and based upon the facts of this whole case, you have to reach the conclusion that when this man got slammed into that doorway in April of 2011, it really caused a change in that condition. And I would like to remind what everybody already knows, you don't need to prove that the work injury was the sole or the primary cause, only that it was a cause of an aggravation. And we don't have to prove that there is an objective manifestation of that as determined by x-rays or MRI films in order to prove an aggravation. That's true. But you also have to acknowledge it can't be what the doctors or medical experts sometimes call a temporary exacerbation. That wouldn't be sufficient to allow recovery, would it? That would not be sufficient. I agree. And lastly, I want to ask you, Williams testified that the restriction that he shouldn't interact with inmates would have been imposed regardless of his work accident of April the 25th. He did say that. He did say that because, you know, this preexisting condition can be aggravated by who knows how many different incidents or movements. But once again, looking at the continuum, before this work accident, nobody was telling him, don't go to work and don't do this. And after the accident, they were. And the other thing that seems to be overlooked about Dr. Williams' testimony is that in addition to testifying, this man should not go back into the jail and should not be around the inmates, he also said, I wouldn't want this guy doing any heavy labor. He shouldn't be doing heavy lifting. He shouldn't be a laborer. He shouldn't be lifting 50 pounds of seed into a combine or something because those strenuous physical activities could cause him a lot of harm in the future as well. So, Dr. Williams not only opined he shouldn't go back to work in the jail, he shouldn't be doing anything that's physically strenuous for fear of re-aggravating this again and has been aggravated ever since the work incident. In the absence of any further questions at this point in time, I will sit down and wait for your vote. Thank you. Thank you, Counselor. Counselor, you may respond. Thank you. Because the court had some money to market Cozumelia and represent the employer. If we're arguing over which medical opinion to believe or whether or not the claimant is credible enough, I think the commission's decision has to be affirmed. I don't see any reason to go through the Supreme Court decisions on the standard of review, but suffice it to say that the commission gets to decide. Let me ask you this. Because we know we've been talking all morning, the claimant has the Dr. Williams and Dr. Hereford ostensibly don't support the claimant's position. And what about Dr. Florence? In some ways she does, but I think the information she has is not consistent with the facts of the case. At one point, I think in just one of her notes, she diagnosed a spinal cord injury. Right. And there's really no evidence of a spinal cord injury. But if that would ostensibly support his position, would it not? Sure. If it were an accurate diagnosis, it would. I think the evidence doesn't support that diagnosis. Why is her diagnosis in and of itself not accurate? Well, if she's basing her work restrictions or his ability or his limitations on what she believes his condition to be and what she believes is inaccurate, then there's really no basis for her limitations that she's imposing. All she really did was prescribe pain medication. What she did when she thought he needed more treatment, she deferred to Dr. Williams for orthopedic counsel. She deferred to the psychiatrist's office, the nurse practitioner kind of plan I think it was, for depression issues. So to say that she's an expert that should be relied upon, I think would be inappropriate. All right. Let me ask you this. He's got a problem documenting objective changes to his spinal condition following the accident, and he's been confronted with that. But what about his argument or theory, which could be legitimate, that this accident aggravated the preexisting condition, which would ostensibly allow for recovery, right? Sure. And that would be based upon his subjective complaints, putting aside that if there truly are no objective changes, I think everyone agrees with that. Then we have to look at his subjective complaints, and are they credible? Well, the commission found that he was an incredible witness, and we can look at the FCE and evidence of that just by itself, where he said that he could only sit for 15 to 20 minutes, yet he sat for longer than that, giving the history to the therapist conducting the FCE. He said that he drives 45 miles, which is 40 to 60 minutes. Well, hold on a second. The commission did award him benefits for the injury. The commission awarded him 41 1 7 weeks of TTD for the period from April 26, 2011, to February 7, 2012, awarded him 37.5 weeks of permanent partial disability for 7.5% loss of a person as a whole. Well, what was that for if it wasn't for an aggravation of a preexisting injury? I think what the commission wrote was that there was a temporary aggravation. Exactly. And he went to MMI. According to the commission, he went to MMI on June 12, 2012, but we know that he received pain treatment subsequent to June 12, and you can receive a recovery for pain treatment after MMI if the pain is related to the original accident, even though you're at maximum medical improvement. But they awarded him benefits for temporary aggravation of a preexisting injury. That's true, and Dr. Williams also testified that the symptoms would be consistent with a thoracic strain. It's a minor issue, but was it really an aggravation or was it a strain of the thoracic spine? That's all fine. I think that's consistent. There's no question that the guy had an accident. There's no question that he went to the doctor and said it hurts, and he got some benefits for that. I think now we're left with does he have an ongoing permanent condition? Well, Dr. Williams wasn't able to say that it would be permanent. Dr. Herford said it was not permanent, and so the commission gets to decide those things. And your position is that that is clearly a conclusion that is not opposite to the evidence? That's correct. Okay. That's correct. I've got all kinds of notes here, but you know my position. It's not, I guess, manifestly the evidence. If there are any further questions, I'll just ask. My only question is how did they cut off his medical on June 12, 2012? Why? That was when Dr. Williams discharged him from care. Yeah, he discharged him from care, but the problem is Herford did not declare that he was not entitled to any further medical treatment until July 31, 2013. And we know from the record that he was treated for pain between June 12, 2012 and July 31, 2013. And if that pain is causally related to his accident, even though he's at MMI, he's entitled to recover for that. The question is, was it related? And they never decided that. I agree with your assessment completely. I think it comes back to his credibility about his symptoms. If his credibility is in question and the commission finds that they're not buying his complaints, then I think it makes sense. Well, I mean, but the point of the matter is they made their decision to cut off his medical on June 12, based on the fact that Williams discharged him from care, not because he wasn't suffering from pain. MMI can occur before you're finished treating for pain. Pain doesn't cure anything. Well, fair enough. He was still complaining of pain at the time of trial, yet the surveillance video from a week before the trial suggests that he was not in pain. I agree with you there, but Herford didn't cut him off until July. And so what happened between June and July? I think it's just a matter of credibility and a matter of being discharged by the primary treating physician. All right. That's fair. Thank you. Thank you, counsel. Counsel, you may reply. Thank you, Your Honor. All right. Would you want to address that last line of questioning by Justice Hoffman? He did receive benefits. He obviously was awarded benefits. Well, I think Justice Hoffman is right on point. I mean, MMI is the point at which time you can't really justify the payment of temporary total disability benefits anymore. Dr. Williams is basically saying, well, this guy's not a service candidate. There's really not a whole lot more I can do for you. It's time for you to move on. And that's when he begins to actively treat with his primary care physician, who is Dr. Florence. And for the next two, three, four years, up until the time of trial, Dr. Florence is the one seeing him regularly, prescribing his pain medication, and periodically filling out his disability form, saying this man cannot work. Well, what is the finding that the apparent continuation of pain is related? The reason for the continuing pain? Well, yeah. I mean, because the employer is responsible for pain treatment, if it's not related to the work. There is no other cause anywhere in the record other than the work injury. We don't know. We don't know if the pain treatment that he received after June the 12th is causally related to his work injury, but that's not the basis upon which the commission denied the treatment. They denied the treatment merely because he'd been discharged from care by Dr. Williams, which does not mean that it's up, and we know he got subsequent pain treatment. Correct. It does not mean it's not causally related. That has to be decided by somebody. That is correct. Essentially, the commission's decision just totally discounts whatever Dr. Florence has to say about the poor guy, and that's just wrong. Simply because she's not a fact specialist doesn't mean she doesn't, she's not a doctor, she's not examining the person, she wouldn't be prescribing pain medication over and over again unless she thought the guy was in pain and needed it. So every doctor who has treated this petitioner or has examined this petitioner, including Dr. Herford, the Section 12 examiner, has said he's got a preexisting condition, it was aggravated, it made his pain worse. Even Dr. Herford says, yeah, he's going to need ongoing pain management. She just makes the distinction that it's due to his preexisting condition as opposed to the work injury, which under the facts of this case, I think is ridiculous. If there aren't any other questions, I thank you. Well, thank you, counsel, both, for your fine arguments this morning. We'll be taking under advisement that this position shall issue. The court will stand recess until 1.30 this afternoon.